

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Marilyn Gillen

    Plaintiff,

v.

C.A. No. 13-3118

Transferred from the Court of Common
Pleas, Philadelphia County, No. 003697

**13   3118**

**FILED**

JUN - 6 2013

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

The Boeing Company;
Foster Wheeler Corporation;
Brand Insulations, Inc.;
Certainteed Corporation;
General Electric Company;
Georgia-Pacific Corporation;
Goulds Pumps, Inc. a/k/a ITT Goulds
Pumps and Gould Manufacturing;
Viacom, Inc., Successor-in-Interest to
CBS Corporation, f/k/a Westinghouse
Electric Corporation;
Union Carbide Corporation;
Foster Wheeler Energy Corporation;
BASF Corporation;
BASF Structural Materials, Inc.;
J.T. Baker Chemical Company;
Ferro Corporation;
3M Company;
Fiber Resin Corporation;
First Resin Corporation;
Allied Resin Corporation;
Products Research & Chemical Corp.;
Hopeman Brothers, Inc.;
Philips Electronics North America;
Kaiser Gypsum Corporation;
Kaiser Gypsum Company, Inc.;
Henkel Corporation, Successor-in-interest
to Dexter Corporation and Hysol
Corporation;
Dexter Hysol Aerospace, Inc.;
National Automotive Parts Association;
Genuine Parts Company d/b/a NAPA;
The Pep Boys – Manny, Moe & Jack;
Honeywell International, Inc., f/k/a
Allied-Signal, Inc. Successor-in-interest
to Bendix Corporation;
Pneumo Abex Corporation;
Union Carbide Corporation; and

Exide Technologies, Inc.,                                  :
Successor-In-Interest to Goulds                            :
Electroniics, Inc. and Wilkening Mfg. Co.,                 :
                                                           :
                    Defendants.                            :

## DEFENDANT THE BOEING COMPANY'S
## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant The Boeing Company ("Boeing") hereby removes the above-captioned action from the Court of Common Pleas, Philadelphia County to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446. In support of said removal, Boeing respectfully states as follows:

## I. BACKGROUND

1.    On October 25, 2012, Plaintiff, Marilyn Gillen, filed a two-page "short form" Complaint initiating the instant asbestos-exposure personal injury action, *Marilyn Gillen v. The Boeing Company, et al.,* Civil Action No. 003697, in the Court of Common Pleas, Philadelphia County ("State Court") against thirty entity defendants, including her former employer, Boeing. *See* Complaint, attached as Exhibit A. Boeing entered its appearance on December 3, 2012.

2.    Mrs. Gillen's Complaint alleges, *in toto,* the following with regard to her "asbestos exposure history":

Plaintiff worked from approximately 1966 to 2005 at Boeing Vertol;
Plaintiff sustained household exposure from 1966 to 1999 as the result of husband, Hugh Gillen's work at Boeing Vertol; and
Plaintiff sustained non-occupational exposure to asbestos-containing products.

Ex. A at ¶ 3(a)-(c). The Complaint further alleges that Mrs. Gillen was diagnosed with mesothelioma on or about September 25, 2012 as a result of her exposure to asbestos. *Id.* at ¶ 4.

3.    As is obvious on its face, Mrs. Gillen's Complaint does not detail the material factual bases for claims against Boeing. Specifically, Mrs. Gillen's Complaint fails to allege (1)

2

whether she experienced exposure to asbestos from products attributable to Boeing or materials located at Boeing's Ridley Park, Pennsylvania premises, where she worked throughout her employment with Boeing, or both; (2) whether she experienced household/indirect exposure to said products or premises, *id.* at ¶ 3(b), or direct exposure to the same, *id.* at ¶ 3(a), or both; (3) to which asbestos-containing Boeing products that either she or her husband was exposed while employed by Boeing; (4) to which asbestos-containing locations/worksites either she or her husband were exposed at the 500-acre-plus Ridley Park facility while employed by Boeing; (5) the type(s), brand(s) and/or trade names, or manufacturer(s) of any products or materials that are the alleged source(s) of her "household" and "non-occupational exposure[s]" to asbestos, *id.* at ¶ 3(b) & (c); (6) the dates or time periods of her alleged exposure to asbestos-containing products or premises, or both; (7) the nature and scope of her job functions during her nearly 40 years of employment with Boeing at the Ridley Park facility; or (9) the nature and scope of her husband's job functions during his 33 years of employment with Boeing at the Ridley Park facility. In sum, Mrs. Gillen's Complaint does not identify any Boeing product, let alone one that was asbestos-containing, to which she was ever exposed. Consequently, no basis for removal jurisdiction was evident from the Complaint.

4.      Mrs. Gillen provided written responses to Defendant's General Interrogatories, Sets I and II, on December 5, 2012 and January 9, 2013, respectfully. *See* Plaintiff's Responses to Defendant's General Interrogatories, Sets I and II, attached at Exhibit C at 20-56. In those responses, Mrs. Gillen was again unable to identify any asbestos-containing product or source attributable to Boeing to which either she or her husband were ever exposed, let alone supply the dates, times, locations, or circumstances of such exposure despite being directly asked to provide the same. For example, Mrs. Gillen's response to Interrogatory 9, which stated "List, by type,

3

brand, and/or trade name, and manufacturer, every asbestos-containing product to which you

believe you were exposed," was as follows:

> Plaintiff is unable to specifically provide the exact trade name or manufacturer of
> every asbestos-containing product to which she was previously exposed at each
> and every work site. This information is also more readily available to Defendants,
> who actually manufactured, fabricated and distributed said asbestos-containing
> products, to which Plaintiff was exposed, at such work sites. However, in an effort
> to be cooperative and provide Defendants with as much information as possible,
> see Exhibit "A".

Ex. C at 22. Mrs. Gillen's Exhibit "A," however, is equally non-responsive, stating:

## PRODUCT I.D.

> Plaintiff provides this information on an expedited basis so that her deposition can
> be taken before she is too sick to testify, and she may supplement this response as
> his investigation and discovery continue. Plaintiff was employed in a clerical
> position at Boeing Vertol. Plaintiff was exposed to asbestos brought home from
> Boeing Vertol on her husband, Hugh Gillen's clothing. She was also exposed
> when her husband changed brakes and friction products at home.

*Id.* at 28. As a result, no basis for removal jurisdiction was apparent from Mrs. Gillen's written

responses to the Defendant's General Interrogatories.

5.      Mrs. Gillen was deposed on December 14, 2012. *See* Gillen Dep. Excerpts, attached at

Exhibit B. Like her written discovery responses, however, Mrs. Gillen's her testimony was

practically bereft of factual details material to her claims against Boeing. Moreover, she once

again failed to identify any asbestos-containing product or source attributable to Boeing to which

she or her husband was ever exposed. For example, in response to product identification

inquiries from counsel for General Electric, Mrs. Gillen testified as follows:

> Q.      Which leads me to a sort of more general question over the course of your
>         time at Boeing. You said to several different people that you don't
>         yourself know if he was -- any particular product your husband was
>         ever exposed to that ever contained asbestos or not, you just don't know.
> A.      No, I don't know.
> Q.      Okay. And as the manufacturers of anything he worked on, whether it
>         be the equipment or the materials he used, you just don't know?

4

A.     No.

Ex. B at 146:22-147:10. Indeed, even when expressly asked about the Boeing CH-46 "Chinook"

helicopter, Mrs. Gillen testified that she was unaware neither of which parts of that aircraft her

husband, who was a machinist, may have been exposed or whether the aircraft or any of its parts

contained any asbestos:

- Q.     Do you know if your husband specifically worked in the manufacture of Chinook helicopters or not?
- A.     He worked on the manufacture of the parts for them.
- Q.     Of some parts for them?
- A.     Yes.
- Q.     But which parts he worked on, do you know?
- A.     I don't know.
- Q.     Okay. And, again, you don't know whether those parts did or didn't contain asbestos?
- A.     No, I don't.

*Id.* at 150:2-15. Thus, Mrs. Gillen's deposition testimony, which failed to identify any Boeing

product as a possible source of either Mr. or Mrs. Gillen's alleged asbestos exposure, provided

no basis for removal jurisdiction.

6.     As a result of both Mrs. Gillen's failure to identify any product as a source of her alleged

asbestos exposure and her attempt to cure the same by propounding egregiously abusive

discovery requests on Boeing, the parties became engaged in a scope-of-discovery dispute.

Unfortunately, Plaintiff set to resolve that dispute first, on April 1, 2013, by moving to compel,

and then, on May 20, 2013, by filing a meritless motion for sanctions. Ex. C at 196-229; 283-

371.

7.     On May 28, 2013, Boeing responded and moved for a protective order on May 28, 2013,

explaining Plaintiff's failure to identify any product as a potential source of her asbestos

exposure and seeking a reasonable narrowing of her discovery requests. *Id.* at 372-97.

8.    Plaintiff filed her reply in support of motion for sanctions on June 3, 2013. *Id.* at 398-
530. Mrs. Gillen begins that reply by simply reiterating her deposition testimony that "the
Chinook helicopter . . . was a Boeing product . . . that her husband worked on." *Id.* at 400. She
then goes on to contend, *for the first and only time in this litigation*, that asbestos-containing
materials were used in the manufacture of the Chinook and/or its parts. Relying on a March
1965 Department of Defense document never previously mentioned or produced in the above-
captioned action, Mrs. Gillen's reply provides as follows:

> . . . U.S. Department of Defense documents describe the use of asbestos
> containing composite phenolic resins and plastics used in the manufacture of
> helicopter and airplane parts. (See, Exhibit E).  The documents specifically
> references information gathered from Boeing-Vertol and discusses the Chinook
> and other Boeing-Vertol Helicopters that were manufactured at Ridley Park.

*Id.* at 401. In other words, on June 3, 2013, Boeing was put on notice, for the first—and only—
time, of Mrs. Gillen's allegation that the CH-46 "Chinook" was a potential source of her asbestos
exposure.

9.    Boeing manufactured the CH-46 aircraft for the United States Armed Forces under the
direct supervision, control, order, and directive of federal government officers acting under the
color of federal office and military procurement contracts, which mandated that Boeing produce
the aircraft in accordance with detailed, government-approved specifications.  As a result, on
June 3, 2013, Boeing also was put on notice, for the first and only time in this litigation, that it
had a colorable basis to assert federal officer removal jurisdiction under 28 U.S.C. § 1442(a)(1).

10.    The procedure for removal here is controlled by 28 U.S.C. § 1446(b), which states that
"if the case stated by the initial pleading is not removable, a notice of removal may be filed
within thirty days after receipt by the defendant, through service or otherwise, of a copy of an
amended pleading, motion, order or other paper from which it may first be ascertained that the

6

case is one which is or has become removable . . . ." As described above, Plaintiff's June 3, 2013 reply in support of motion for sanctions constitutes the first pleading, motion, order, or other paper from which it could be ascertained that Boeing had a right to remove the instant action to this honorable Court.

11. This Notice of Removal is filed within 30 days of June 3, 2013, when Boeing was first noticed of Mrs. Gillen's claim that the CH-46 was a potential source of her alleged asbestos exposure. As such, Boeing has removed the action within the time prescribed by law for it to do so. 28 U.S.C. § 1446(b).

## II. FEDERAL OFFICER REMOVAL IS APPROPRIATE UNDER 28 U.S.C. § 1442(a)(1)

12. Removal is proper under 28 U.S.C. § 1442(a)(1) when (a) the defendant seeking removal is a "person" within the meaning of the statute; (b) the defendant demonstrates a causal nexus between the defendant's actions, taken pursuant to a federal officer's directions and under color of federal office, and the plaintiff's claims; and (c) the defendant asserts a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 124-25, 13435 (1989).

13. Boeing is a corporation, which qualifies as a "person" under 28 U.S.C. § 1442(a)(1). *In re Asbestos Prods. Liability Litig.*, 770 F. Supp. 2d 736, 743 (E.D. Pa. 2011); *Regional Med. Trans., Inc.* v. *Highmark, Inc.*, 541 F. Supp. 2d 718, 723-24 (E.D. Pa. 2008); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998).

14. Plaintiff alleges that she potentially experienced bystander/secondary exposure to asbestos as a result of her husband's alleged direct exposure to asbestos-containing components on the CH-46 helicopter.

15. Boeing      manufactured      the      CH-46      pursuant      to      military procurement contracts with the Government and in compliance with detailed design

7

specifications that were reviewed and approved by the Government. To the extent that the design or manufacture of these aircraft included asbestos-containing parts or components, such inclusion was required by the United States Government in its detailed and precise specifications. Further, some components that plaintiff alleges contain asbestos, such as the engines, were furnished by the government and the government required Boeing to install them on the aircraft. Any decision regarding asbestos in these aircraft or the component parts thereof was under the full control and discretion of the United States Government. *See Green v. A.W. Chesterton Co.*, 366 F. Supp. 2d 149, 155-57 (D. Me. 2005). The United States government likewise controlled the content of written materials and warnings associated with such aircraft. Boeing's design and manufacture of the CH-46 and A-4 under the control and supervision of the Government satisfy the "acting under" nexus requirement. *See, e.g., Winters*, 149 F.3d at 400 (holding that the Defense Department's specifications and supervision over Agent Orange defoliant sufficed to demonstrate that defendants acted pursuant to federal direction).

16.     Boeing asserts a colorable federal defense, namely the "government contractor" defense as stated in *Boyle v. United Technologies, Inc.*, 487 U.S. 500 (1988) (government contractors are not liable for injuries caused by design defects in equipment when the contractor built such equipment according to reasonably precise government-approved design specifications), and its progeny, including *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019 (S.D. Ill. 1989) (in which the McDonnell Douglas Corporation obtained a grant of summary judgment under *Boyle* against asbestos claims regarding the manufacture of military aircraft). In *Boyle*, the Supreme Court held that state law cannot impose liability for alleged defects in military equipment when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the Government

8

about the dangers in the use of the equipment that were known to the supplier but not to the United States. 487 U.S. at 512.

17.     The government contractor defense is satisfied here because the design specifications for the CH-46 and A-4 were government approved, the aircraft conformed to these specifications, and, to the extent that asbestos was known at the time to be a hazardous material, the government's knowledge of such hazards was superior to that of Boeing. *Fung v. Abex Corp.*, 816 F. Supp. 569, 573 (N.D. Cal. 1992).

18.     There is a causal nexus between Boeing's actions under color of government procurement officers and Plaintiff's claims here because (1) Plaintiff alleges that she potentially experienced bystander/secondary exposure to asbestos as a result of her husband's alleged direct exposure to asbestos-containing components on the CH-46 in compliance with government specifications, and (2) the purported asbestos which allegedly caused her injuries was used and/or installed by Boeing while acting under direction of the federal officers. There is an unequivocal "causal nexus" between the direction Boeing received from the military, which it followed, and Mrs. Gillen's alleged injury. *Akin v. Big Three Indus.*, 851 F. Supp. 819, 823-24 (E.D. Tex. 1994) ("[W]hen a government contractor builds a product pursuant to Air Force specifications and is later sued because compliance with those specifications allegedly causes personal injuries, the nexus requirement is satisfied."); *Fung*, 816 F. Supp. at 572 (causal nexus is satisfied upon showing of "strong government intervention and the threat that a defendant will be sued in state court based upon actions taken pursuant to federal direction"); *Pack v. A C And S, Inc.*, 838 F. Supp. 1099, 1103 (D. Md. 1993) (defendant satisfied the causal nexus requirement because "the government here contracted with [defendant] to build turbine generators under government specifications during the World War II period").

9

19.     In addition, Boeing is entitled to federal officer removal under 28 U.S.C. § 1442(a)(1) based upon the separate and additional federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940). *Yearsley* established that a government contractor, performing at the direction and authorization of a government officer, is immune from suit based upon performance of the contract. The *Yearsley* doctrine applies here rendering Boeing immunity from suit because Boeing performed the at-issue acts at the direction of government officers acting pursuant to government authorization. In other words, where, as here, the government would be immune from suit had it directly performed the act-issue acts, Boeing is immune for its performance of the same under the government's direction and control.

## III. INTRADISTRICT ASSIGNMENT

20.     This court is the United States District Court for the district and division embracing the place where the original state court complaint was filed and, as such, it is the appropriate venue for removal. 28 U.S.C. § 1446(a).

## IV. NOTICE TO STATE COURT

21.     Boeing has noticed the State Court and other parties to the instant action of this Notice of Removal as required by 28 U.S.C. § 1446(d).

## V. PROCEDURAL COMPLIANCE

22.     Because Boeing satisfies the requirements for removal under 28 U.S.C. § 1442(a)(1), it is entitled to remove this action without obtaining the consent of other defendants. *Pyle v. Meritor Savings Bank*, 821 F. Supp. 1072, 1077 (E.D. Pa. 1993); *see also Ely Valley Mines, Inc. v. Hardford Acc. & Indem. Co.*, 644 F.2d 1310, 1314 (9th Cir. 1981).

23.     Boeing reserves the right to submit affidavits in support of removal, if necessary.

10

**WHEREFORE**, The Boeing Company respectfully requests that this action proceed in this honorable Court as a properly removed action.

Respectfully Submitted,

COOLEY MANION JONES LLP

Jason A. Cincilla (DE Bar No. 4232)
Amaryah K. Bocchino (DE Bar No. 4879)
Jennifer D. Davis Oliva (DE Bar No. 5046)
1105 North Market Street, Suite 200
Wilmington, Delaware 19801
Phone: (302) 657-2100
Email: jcincilla@cmjlaw.com
        abocchino@cmjlaw.com
        jdavisoliva@cmjlaw.com
*Attorneys for Defendant*
*The Boeing Company*

June 6, 2013

11

## CERTIFICATE OF SERVICE

I, undersigned counsel, do hereby certify that, on this 6th day of June, 2013, I did cause a copy of Defendant The Boeing Company's Notice of Removal to be served on all known counsel of record by United States First Class Mail, properly addressed and postage prepaid, pursuant to the rules and procedures of the United States District Court for the Eastern District of Pennsylvania.

Jennifer D. Davis Oliva